

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 26, 2022**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| THE LEVENSON GROUP, INC. | § | Case No. 18-34105-mvl7 |
| AND LEVENSON & HILL, LLC | § | |
| | § | |
| Debtor. | § | |
| | § | |
| JAMES W. CUNNINGHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Adv. Pro. No. 20-03027 |
| DICKEY'S BARBECUE | § | |
| RESTAURANTS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR LEAVE
## TO AMEND AND GRANTING IN PART AND DENYING IN PART
## <u>PLAINTIFF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT</u>

Before this Court is the Motion for Summary Judgment, together with the Brief in Support thereof (collectively, the "**Motion**" or "**MSJ**"), filed by Plaintiff James W. Cunningham, the Chapter 7 Trustee (the "**Trustee**" or "**Plaintiff**"), on December 16, 2021.[1] In the MSJ, the Trustee seeks summary judgment on its breach of contract claim against Defendant Dickey's Barbecue Restaurants, Inc. (the "**Defendant**" or "**Dickey's**"), as well as the Defendant's affirmative defenses and the counterclaim for breach of contract raised in the Answer.[2] Subsequent to the filing of the MSJ, the Defendant filed its Motion to Amend the Answer (the "**Motion to Amend**"), seeking to add an additional defense it asserted in connection with the MSJ.[3]

As stated more fully below, the Court will deny, in part, and grant, in part, the Trustee's MSJ. Additionally, the Court will contemporaneously deny the Defendant's Motion to Amend.

## I.      Jurisdiction and Venue.

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). This Court has authority to adjudicate this matter pursuant to the United States District Court for the Northern District of Texas Miscellaneous Order No. 33. The following shall constitute this Court's reasoning pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.

## II.      Undisputed Facts and Procedural Posture.

After careful review of the parties' assertions, responses, and citations to the record, the following will constitute the Court's findings as to the material, undisputed facts for purposes of the Trustee's MSJ:

---

[1] Dkt. Nos. 36–37.
[2] Dkt. No. 19.
[3] Dkt. No. 50.

2

The Levenson Group, Inc. ("**Levenson**" or the "**Debtor**") was an advertisement agency that primarily took orders from advertising clients and placed those orders with various vendors (the "**Vendors**") in radio, television, outdoor, and online media.[4] Sometime in late 2016, the Levenson Group and the Defendant entered into an Agreement to Provide Marketing Communications Services (the "**Agreement**"), to be effective October 13, 2016, in which the Debtor would provide "marketing, advertising, and public relations services" on behalf of the Defendant.[5] The Agreement provided for a monthly public relations fee of $6,250.00 and media placement fees billed at a rate that would yield a 6.5 percent commission on gross expenditures.[6] The Agreement also provided that the Defendant would pay the Levenson Group a fixed sum of $109,319.23 per week, beginning on November 16, 2016, to cover anticipated expenses.[7]

At some point in 2017, the Trustee alleges that the Defendant informed Levenson that the pricing terms of the Agreement had changed and that the Defendant would pay a flat fee of $39,625.00 per month to Levenson.[8] There is no formal amendment to that effect in the record, nor any disagreement as to its effectiveness. As such, after the pricing amendment, Levenson would provide the Defendant with monthly billing packages, which had to be approved by the Defendant before being paid.[9] Thus, Levenson essentially submitted invoices to the Defendant in arrears for advertisements that ran the previous month. These billing packages gave an extensive breakdown of each advertising expenditure, including the type of medium used and the markets in which the advertisement ran, together with a flat fee.[10]

---

[4] *See* Dkt. No. 1 at 5–6; Trustee's App. 5–11.
[5] *See id*.
[6] *Id*. at 5. ("Monthly Public Relations Service Fee").
[7] *Id.* at 7 ("Billing Other Than Monthly Service Fee").
[8] Dkt. No. 1 at 4.
[9] *See, e.g.*, Trustee App. 12–1804.
[10] *See id.*

On December 6, 2018 (the "**Petition Date**"), Levenson filed for Chapter 7 bankruptcy under Title 11 of the United States Code.[11] In the months leading up to the filing—September, October, November, and December—the Defendant failed to provide payment for services provided under the Agreement. On March 12, 2020, the Trustee filed his Complaint alleging breach of contract, quantum meruit, and unjust enrichment, as well as requesting declaratory judgment.[12] On August 18, 2020, the Defendant filed its Answer, which contained a counterclaim for breach of contract.[13] In the counterclaim, the Defendant alleged, without specificity, that Levenson "failed to provide the services as stated in the Agreement."[14] The Defendant also raised the affirmative defenses of accord and satisfaction, failure of consideration, laches, payment, release, and setoff.[15]

On December 16, 2021, the Trustee filed its MSJ[16] and Brief in Support[17] in which it requests this Court find there is no genuine issue of material fact as to the Trustee's recovery against the Defendant on the Trustee's breach of contract claim. The Trustee also seeks summary judgment as to the Defendant's affirmative defenses and counterclaim for breach of contract. On January 13, 2022, the Defendant filed its Response in Opposition to Plaintiff's Motion for Summary Judgment[18] and Brief in Opposition to Plaintiff's Motion for Summary Judgment

---

[11] Voluntary Petition for Non-Individuals Filing for Bankruptcy, Case No. 18-34105-MVL-7, Dkt. No. 1 (Bankr. N.D. Tex. 2018).
[12] Dkt. No. 1. The Complaint requested judgment in the amount of $1,362,151.56.
[13] Dkt. No. 19. The Trustee has since filed Plaintiff's Answer to Defendant's Counterclaims. Dkt. No. 22.
[14] Dkt. No. 19.
[15] *Id.*
[16] Dkt. No. 36.
[17] Dkt. No. 37.
[18] Dkt. No. 44.

(collectively, the "**Opposition**").[19] In the Opposition, the Defendant waived the affirmative defenses of accord and satisfaction, laches, and release.[21]

On February 22, 2022, the Court held a hearing on the Trustee's MSJ. Counsel for the Trustee and the Defendant appeared. The Court took the MSJ under advisement. On March 3, 2022, the Defendant filed its Motion to Amend requesting the Court allow the Defendant to amend its Answer to include the affirmative defense of anticipatory repudiation.[22] Pending further briefing on the Motion to Amend, the Court held the MSJ under abeyance. On March 24, 2022, the Trustee filed his Response to Motion to Amend Answer (the "**Response**") wherein the Trustee requested that the Court deny leave.[23] Because the relief sought in the Motion to Amend was raised in connection with the MSJ, the Court will rule on the Motion to Amend as a preliminary matter.

### III.     Leave to Amend.

At the hearing on the MSJ, the parties disputed whether anticipatory repudiation had been properly plead. The Trustee argued it had not and pointed out that there was no reference of the affirmative defense until the Defendant filed the Opposition.[24] The Defendant argued generally that the Trustee had been on notice of the defense during discovery and that it did not need to replead to add the defense. Soon after, however, the Defendant changed course and filed the Motion to Amend requesting this Court allow the Defendant to plead anticipatory repudiation.[25] In the Motion to Amend, the Defendant requested that the Court grant the amendment and asserted

---

[19] Dkt. No. 45.
[21] See id. at 9, 11 ("Dickey's does not object to the Motion [for Summary Judgment] solely on the defenses of accord and satisfaction, laches, and release and hereby waives these defenses.").
[22] Dkt. No. 50.
[23] Dkt. No. 53.
[24] In the Opposition, as well as the Answer, the Defendant did not raise anticipatory repudiation as one of its delineated affirmative defenses. Rather, in the Opposition, the Defendant claimed that facts in the record gave rise to a repudiation by the Debtor that precluded summary judgment. See Dkt. No. 45 at 12.
[25] See Dkt. No. 50.

that the request was made in good faith.[26] The Defendant also emphasized that the request was narrow, since it was only to add a singular affirmative defense, and that the Trustee had already conducted discovery on the issue or had the opportunity to do so.[27] In the Response, the Trustee claimed that the proposed amendment: (1) was untimely and would cause undue delay and prejudice; (2) demonstrated bad faith or dilatory motive; and (3) was futile.[28] After considering the arguments of the parties, the Court finds that the Motion to Amend must be **DENIED**.

Rule 15 of the Federal Rules of Civil Procedure, as incorporated by Rule 7015 of the Federal Rules of Bankruptcy Procedure, affords courts the discretion to "freely give leave when justice so requires."[29] "Whether leave to amend should be granted is entrusted to the sound discretion of the district court[.]"[30] While Rule 15 evinces a bias in favor of granting leave to amend,[31] amendments should not be considered "automatic."[32] Courts consider such factors as: "(1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment."[33] In consideration of those factors as applied to the facts of this case, the Court takes special interest in the inexplicable delay in the request and the clear prejudice to the Trustee if granted.

First, the Court notes the unexplained delay in the filing of the Motion to Amend. The Court may properly consider (1) an unexplained delay following an original complaint and (2) whether the facts underlying the amended complaint were known to the party when the original

---

[26] *Id.* at 3–4.
[27] *Id.* at 3.
[28] Dkt. No. 53 at 2.
[29] Fed. R. Civ. P. 15(a)(2).
[30] *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).
[31] *Crear v. U.S. Bank, NA*, 3:14-cv-3136, 2015 WL 12731741, at *1 (N.D. Tex. May 26, 2015).
[32] *In re Riggert*, 399 B.R. 453, 457 (Bankr. N.D. Tex. 2009).
[33] *Id.* (internal citations omitted).

complaint was filed.[34] Here, it appears, at least from the Defendant's filings related to the MSJ, that the Defendant has been planning to argue anticipatory repudiation for some time.[35] Yet, the Defendant filed its request well after the dispositive motion and final discovery deadlines and after five amended scheduling orders. Any facts associated with the defense of anticipatory repudiation were known or should have been known at the time of the Answer, let alone before the Trustee filed the instant MSJ.

The Trustee accuses the Defendant of a dilatory, and even bad faith, motive.[36] The Court will not go so far as to infer such a motive from the pleadings. However, the Court must note that, at best, the Defendant has procrastinated *severely* in filing an amendment it clearly believed was of high importance to its case. The Court will not reward the Defendant for dragging its feet and attempting to present an additional defense in the "eleventh hour."[37] The Defendant has not presented any evidence that this undue delay "was due to oversight, inadvertence, or excusable neglect."[38] Rather, the Defendant rests its argument on the narrowness of the request and the claim that the Trustee was on notice of the defense and had conducted discovery accordingly.[39] That does not answer why the Defendant rested on its laurels to such an extent, and it does not show that the delay was due to oversight, inadvertence, or excusable neglect. If anticipatory repudiation was so central to the Defendant's case and, as the Defendant has presented, it knew early on its importance to defending against the Trustee's allegation of breach, it is **inexplicable** why the Defendant did not plead the defense in its original Answer or seek to amend **prior** to the close of

---

[34] *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 315–16 (5th Cir. 1996) (internal citations omitted).
[35] *See, e.g.*, Dkt. No. 45 at 12.
[36] Dkt. No. 53 at 7–8.
[37] *Id.* at 8 (citing *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019)).
[38] *See Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981).
[39] Dkt. No. 50 at 3.

discovery, or at minimum, in connection with its MSJ response. Rather, the Defendant argued at the hearing on the MSJ that the Answer **need not** be replead.

Second, the Court puts heavy emphasis on the clear prejudice to the Trustee if the Court were to grant the amendment. The Trustee filed this case well over two years ago; discovery has now been complete for *many* months. Dispositive motions have been filed and heard. The Trustee has rightfully begun preparation for the impending trial date, including subpoenaing relevant witnesses.[40] It would be highly prejudicial to the Trustee, in the midst of this preparation, to be belabored with an additional defense the Defendant did not originally plead.[41] The Defendant claims that the Trustee would not be prejudiced by the amendment, for varying reasons, including that: (1) the Trustee was on notice of the defense despite it not being plead; (2) the Defendant asserted a "substantially similar" defense[42] and the Trustee chose to not conduct on discovery on that defense; (3) the Defendant can still question former Dickey's Chief Financial Officer, Faithe Nicholson, on the defense, and (4) there is "ample time" before trial.[43] The Court finds these arguments unavailing. The Court will not infer the Trustee's strategy on discovery, and it is unpersuasive to claim that the Trustee could have conducted discovery on a similar defense when the defense at issue in *this amendment* was not plead. Anticipatory repudiation is a stand-alone

---

[40] Dkt. No. 53 ("[T]he Plaintiff is in the process of preparing for the upcoming trial date, including issuing subpoenas to necessary witnesses and preparing pre-trial briefing on validly-asserted claims and defenses.").

[41] *Riggert*, 399 B.R. at 459 ("Moreover, to permit [the Plaintiff] to amend its Complaint at this very late date would unfairly prejudice the Debtor. Discovery has gone on for months and has now concluded, by terms of the governing Scheduling Order in this case. Granting [the Plaintiff's] Motion for Leave would prejudice the Debtor by delaying the trial.").

[42] Dkt. No. 50 at 3 ("[I]n its initial Answer, Dickey's reserved the right to amend its Answer to assert additional defenses and asserted a substantially similar defense to anticipatory repudiation (which was not addressed by the Plaintiff in his motion for summary judgment), namely that the Plaintiff's damages are not attributable to any acts or omissions of Dickey's, but are due to the acts or omissions of the Plaintiff or to third parties as to whom Dickey's has no right or ability to control. This defense put the Plaintiff on inquiry notice that Dickey's was asserting that the Debtor's actions and omissions were the source of the Plaintiff's damages. However, the Plaintiff took no discovery on this subject.").

[43] *See* Dkt. No. 50 at 3–4.

defense that must be plead.[44] Overall, any amendment by the Defendant of this defense would be highly prejudicial so close to trial. There is not "ample time" to prepare for such defense barring the Court pushing the trial date.

The Court will also note, though afforded little weight in the Court's ruling, that even if it allowed the amendment, the Defendant has presented scant evidence of the defense to prevent summary judgment. Reviewing the record before the Court at summary judgment, the Defendant has principally presented two pieces of evidence backing its anticipatory repudiation argument: (1) the deposition of Faithe Nicholson;[45] and (2) the Declaration of Jay Rooney.[46] Both generally state that Dickey's was informed by Levenson of the incoming bankruptcy and assert that such was a repudiation of the Agreement.[47] These statements, in addition to being hearsay,[48] are minimal evidence of repudiation, especially considering the **_high_** bar required to prove anticipatory repudiation under Texas law.[49] Anticipatory repudiation requires absolute repudiation.[50] Filing bankruptcy is not _per se_ a repudiation of underlying contracts.[51] Even so, the Court need not analyze the futility of the amendment because of the aforementioned issues of allowing the amendment so late in the case.

---

[44] _See Cook Composites, Inc. v. Westlake Styrene Corp._, 15 S.W.3d 124, 140 (Tex.App.—Houston [14th Dist] 2000, no pet.).

[45] Nicholson Dep., pp. 7:8-12; 61:19-63:16.

[46] Rooney Decl., ¶ 6 ("Not later than November 2018, Levenson advised Dickey's that it was planning to file bankruptcy and go out of business. Levenson's repudiation of the Agreement caused the significant disruption to Dickey's as it was forced to arrange advertising on its own.").

[47] _See id._

[48] _See In re Asia_, 326 B.R. 240, 252–53 (Bankr. S.D.N.Y. 2005) ("There is not evidence to support [the repudiation] position beyond the hearsay statements of 360networks' attorneys. They are insufficient to raise a triable issue or defeat Asia Global's [MSJ].").

[49] The elements of a claim for anticipatory breach of contract under Texas law are: (1) **_absolute_** repudiation of a contractual obligation; (2) lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party. _Enis v. Bank of America, N.A._, 3:12-cv-295-D, 2012 WL 4741073, at *4 (N.D. Tex. Oct. 3, 2012) (citing _Gonzalez v. Denning_, 394 F.3d 388, 394 (5th Cir. 2004) (emphasis added). "To absolutely repudiate, a party must, through words or actions, declare an unconditional intent not to perform the contract according to its terms." _Id._ (citations omitted).

[50] _See id._

[51] _See, e.g._, _Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc._, 252 F.3d 911, 917 (7th Cir. 2001) ("Filing for bankruptcy . . . is not anticipatory repudiation per se.").

In conclusion, the Defendant's delay in bringing the amendment is inexcusable, and the Trustee would be prejudiced by having to prepare for this defense so late in the game. As such, the Court will **DENY** the Motion to Amend.

## IV. Summary Judgment Standard.

In deciding a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[52] In making this determination, the facts and inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party.[53] A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial.[54] In order to support or refute an assertion that a genuine issue of material fact exists, the parties must cite to particular parts of the record, show that the materials cited do not establish the absence or presence of a general dispute, or show that an adverse party cannot produce admissible evidence to support the fact.[55] A genuine issue of material fact exists if the evidence is such that a reasonable factfinder could return a judgment for the nonmoving party.[56]

## V. Analysis.

A wise, but fictional, wide receiver for the Arizona Cardinals once emphatically said, "Show me the money." Much like Rod Tidwell, the Trustee now comes before the Court seeking summary judgment on the payment allegedly owed to the Debtor for services provided under the

---

[52] Fed. R. Civ. P. 56, made applicable to bankruptcy adversary proceedings pursuant to Fed. R. Bankr. P. 7056.
[53] *Berquist v. Washington Mutual Bank*, 500 F.3d 344, 349 (5th Cir. 2007).
[54] *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).
[55] Fed. R. Civ. P. 56(c)(1).
[56] *Pylant v. Hartford Life and Acc. Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Agreement. In response, the Defendant principally argues that such payment was made, admittedly, in large part, to the Vendors, and it is therefore entitled to a setoff. As such, before the Court is the Trustee's MSJ for breach of contract, the Defendant's affirmative defenses of failure of consideration, payment and setoff, and the Defendant's counterclaim for breach of contract.

After considering the extensive briefing of the parties, the undisputed facts as laid out above, and the oral arguments of counsel, the Court concludes that the MSJ should be granted on the Trustee's breach of contract claim, the affirmative defenses of payment and failure of consideration, and the Defendant's counterclaim for breach of contract. Summary judgment is denied, however, as to the Defendant's affirmative defense of setoff. The Court will defer ruling on attorneys' fees until the conclusion of the adversary proceeding. The following constitutes the Court's analysis underlying the ruling herein.

## A. The Trustee's Claim for Breach of the Agreement

The Trustee asserts that there is no genuine issue of material fact precluding recovery on his breach of contract claim. Specifically, the Trustee asserts that the evidence and record before the Court at summary judgment demonstrate: (1) the existence and terms of the Agreement; (2) the Debtor's performance under the Agreement; (3) the Defendant's failure and refusal to perform its payment obligations under the Agreement; and (4) damages to the Debtor resulting from the Defendant's non-payment.[58] In response, the Defendant claims that the Debtor failed to properly tender performance, and instead, reduced its staff in the lead up to filing for bankruptcy.[59] As such, the Defendant asserts that it made payments to the Vendors directly because the Debtor failed to do so.[60] Additionally, the Defendant claims there have been no damages to the estate from the

---

[58] Dkt. No. 37 at 9.
[59] Dkt. No. 45 at 12.
[60] *Id.*

alleged breach of contract, since the Defendant paid the majority of the amounts sought by the Trustee directly to the Vendors.[61] For the reasons stated herein, the Court **GRANTS** summary judgment as to the Trustee's claim for breach of contract.

Under Texas law, the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the Plaintiff; (3) breach of the contract by the Defendant; and (4) damages sustained by the Plaintiff because of the breach.[62] The Court finds that the first element, the existence of a valid contract, is uncontroverted. Both the Debtor and the Defendant signed the Agreement,[63] and the Defendant, in its Answer, admitted that it contracted with the Debtor for media services under the Agreement.[64] Any argument that the Agreement was not valid, during the months in question, appears to be based on the alleged repudiation by the Debtor,[65] an affirmative defense that was not timely pleaded. Further, the Defendant bases its counterclaim for breach of contract on the terms of the Agreement, the same terms that govern the instant breach of contract claim.[66] The Court sees this, at least implicitly, as a concession as to the validity of the Agreement. Accordingly, the Court the court grants summary judgment as to the first element of the Trustee's breach of contract claim.[67]

Before moving to the remaining elements of the breach of contract claim, the Court finds it necessary to further delineate the terms of the Agreement. The Agreement itself provided that

---

[61] *Id.* at 12–13.

[62] *In re Arnette*, 454 B.R. 663, 691 (Bankr. N.D. Tex. 2011) (citing *Aguir v. Segal*, 167 S.W.3d 443, 450 (Tex.App.—Houston [14th Dist.] 2004, pet. denied)).

[63] Trustee's App. 11.

[64] Dkt. No. 19 ("Dickey's admits that it contracted with Debtor Levenson & Hill for media services via the Agreement.").

[65] Dkt. No. 45 at 12 ("[D]ue to Levenson's express statements to Dickey's that it was going out of business, it anticipatorily repudiated the Agreement, thereby excusing Dickey's performance thereunder. Accordingly, a valid contract did not exist at the time of, without limitation, the December 2018 Invoice Package.").

[66] Dkt. No. 19 at 6.

[67] *See Brickley v. Scattered Corp. (In re H & M Oil & Gas)*, 514 B.R. 790, 801 (Bankr. N.D. Tex. 2014) ("Here, the parties do not dispute that the [contract] was an existing and valid contract, so the Court will focus its analysis on the remaining elements.").

the Debtor would provide to the Defendant certain marketing services.[68] In return for those services, the Defendant would pay a monthly service fee,[69] as well as reimburse the Debtor for certain expenses.[70] The Debtor's provision of services under the Agreement was subject to the Defendant's approval or authorization.[71] Soon after signing the Agreement, the Debtor and Defendant signed an authorization letter in which the Defendant "authorize[d] Levenson & Hill (agency) to make media buys on [Dickey's] behalf."[72] The authorization letter provided that prior to payment by the Defendant to the Debtor, the Defendant would be liable.[73] The Agreement itself continued for an indefinite term and could not be terminated by either party without written notice 90-days prior.[74] In the event of termination, the Agreement provided for payment for those services already performed.[75] With these terms in mind, the Court turns to the remaining elements of the Trustee's breach of contract claim.

As to the second element, the Defendant contends that the Debtor failed to properly tender performance under the Agreement.[76] Specifically, the Defendant argues that the Rooney Declaration and testimony of Nicholson provide that the Debtor significantly reduced its staff leading up to the bankruptcy filing, and as such, the Defendant was forced to replace ads that should have been run and pay the Vendors directly.[77] The Trustee, however, contends that all material obligations under the Agreement were performed and the Defendant was billed

---

[68] Trustee's App. 5. Those services included ordering the media space/time for running ads, auditing invoices from Vendors, assisting the Defendant in the analysis of advertising efforts, and leading public relations efforts. *Id.*
[69] *See id.* ("The Client **shall** pay the Agency for the Services described[.]") (emphasis added).
[70] *Id.* at 7.
[71] *Id.*
[72] *Id.* at 4.
[73] *Id.* ("The agency shall be solely liable for payment of all invoices if the agency has been paid for those invoices by the client/advertiser. Prior to payment to the agency, Dickey's Barbecue Restaurants, Inc., the client/advertiser shall be solely responsible.").
[74] *Id.* at 10.
[75] *Id.*
[76] Dkt. No. 45 at 12.
[77] *Id.*

accordingly.[78] The Court agrees with the Trustee as to the specific invoice packages in question and will grant summary judgment as to the second element.

The Defendant contracted with the Debtor to provide marketing, advertising, and public relations services on behalf of the Defendant.[79] The record is *profuse* with invoices sent to the Defendant for advertisements ran during the period in question.[80] These invoices detailed the date, time, type, number of broadcasts, and duration for all the advertisements that ran during the billing cycles throughout September 2018 until December 2018.[81] Ms. Nicholson's testimony does not refute this, and further, her testimony appears to present that the Debtor kept critical staff in anticipation of the bankruptcy, even if the staff was reduced.[82] Although payment may be at issue, the fact that these advertisements were placed with the advertisers and ran during the period in question is not. There is no provision in the Agreement whereby the Debtor's failure to pay Vendors or Dickey's payment thereof is a breach.[83] In fact, the authorization letter provided that Dickey's was responsible for vendor payments if it did not pay Levenson therefor.[84]As such, the Court finds no genuine dispute as to whether the Debtor properly tendered performance under the Agreement, and it will grant summary judgment as to the second element of breach of contract.

As to the third element, the Trustee argues it is undisputed that the Defendant failed to pay the Debtor for services rendered under the Agreement and that it is entitled to summary judgment as to the Defendant's breach.[85] In response, the Defendant again relies primarily on its non-pleaded

---

[78] Dkt. No. 37 at 13.
[79] Trustee App. 5.
[80] *See, e.g.*, *id.* at 12–1804.
[81] *See id.*
[82] Nicholson Dep. 7:13–19. When asked whether the accounting firm staff was short-staffed, Ms. Nicholson responded that the Debtor had "let some people go" but had "kept critical pillars . . . the billers that we needed to complete the bill[.]" *Id.*
[83] Ms. Nicholson did testify that media vendors could go directly to Dickey's and ask for payment if the Debtor did not pay, but she added that she was unaware of that ever happening. Nicholson Dep. 16:13–17:2.
[84] Trustee's App. 4.
[85] Dkt. No. 37 at 13.

anticipatory repudiation defense.[86] However, even ignoring the Defendant's failure to plead anticipatory repudiation, the overwhelming evidence before the Court presents no material dispute as to the Defendant's breach.

As already stated, the Debtor tendered performance by the running of advertisements.[87] The Defendant failed to pay for those services.[88] While the Defendant might argue that it paid Vendors directly, such a defense goes more to the defense of setoff or perhaps mitigation of damages, not whether the Defendant breached the Agreement when it did not pay the Debtor for services rendered. Again, the question is whether the Defendant breached the Agreement. The Agreement required payment for services rendered by the Debtor.[89] The summary judgment evidence shows that those services were provided by the Debtor and that the Defendant has not paid.[90] Accordingly, the Court grants summary judgment as to the third element of breach of contract.

Finally, the Trustee requests summary judgment on the fourth element of breach of contract: whether the Debtor suffered damages on account of the Defendant's breach.[91] The Trustee asserts that it is undisputed that the Debtor owes liquidated amounts for services described in the Vendor invoices.[92] In total, the Trustee contends that the Debtor's records provide that "[s]ervices were rendered, liquidated amounts were billed, and were unpaid in the amount of $1,315,257.52."[93] In response, the Defendant argues that the bankruptcy estate was not damaged by the alleged breach of contract because the Defendant paid the "large majority" of the amounts

---

[86] Dkt. No. 45 at 12 ("Moreover, due to Levenson's express statements to Dickey's that it was going out of business, it anticipatorily repudiated the Agreement, thereby excusing Dickey's performance thereunder.").

[87] *See, e.g.*, Trustee App. 12–1804.

[88] *See id.*; *see also id.* at 1808–09 (Nicholson Decl.).

[89] *Id.* at 5–7 (the Agreement).

[90] *See, e.g.*, Trustee App. 12–1804; *see also id.* at 1808–09 (Nicholson Decl.).

[91] *See* Dkt. No. 37 at 14.

[92] *Id.*

[93] *Id.*; *see* Trustee's App. 1808–09 (Nicholson Decl.).

sought by the Trustee directly to the Vendors.[94] The Defendant contends that it eliminated or reduced claims against the bankruptcy estate and that the excess amounts, if those amounts are due and owing, are not ripe for summary judgment because of the Debtor's own repudiation of the Agreement and nonperformance.[95] The Court finds no genuine dispute of material fact that the Debtor suffered *some* damages by the Defendant's breach; accordingly, the Court grants summary judgment as to the fourth element of breach of contract. The Court will not reach the *amount* of damages owed in this Order for the reasons stated more fully in its analysis of the Defendant's setoff defense.

The record before the Court is bountiful with examples of invoices for services rendered by the Debtor and not paid by the Defendant.[96] Though the Defendant contends that it paid certain Vendors directly, it has not presented sufficiently cogent evidence drawing the link between the checks in its Appendix to the invoices from the Debtor, nor did the Defendant attempt to do so at the hearing on the MSJ. The question for the Court, at summary judgment, is whether damages were sustained by the Defendant's breach. The answer is yes, and the Court finds no material dispute as to *that* question of fact. Yet, the Court must note that there is a material dispute of fact as to the actual liquidated amount due and owing by the Defendant. The record provides that the Defendant made *some* payments to the Vendors thereby reducing any claim against the estate.[97] Such an argument will be credited to the Defendant's setoff defense. However, it is clear from the record that the Debtor suffered damages from the Defendant's breach, *i.e.*, the Defendant's failure

---

[94] Dkt. No. 45 at 12–13.
[95] *Id.* at 13.
[96] *See, e.g.*, Trustee's App. 821 (WCTO-FM Radio Invoice).
[97] *See, e.g.*, Defendant's Exh. 46-3 at 43 (check dictating a $2,847.50 payment on November 27, 2018 by Dickey's to Katz Radio Group Network).

to pay for services rendered by the Debtor.[98] Thus, the Court will grant summary judgment as to the fourth element of breach of contract.

In summary, the Court finds no genuine dispute of material fact exists as to each element of the Trustee's breach of contract claim. The Debtor provided services under a valid Agreement; the Defendant did not pay for those services *in full*. Accordingly, the Court grants summary judgment on the Trustee's breach of contract claim.[99]

### B. The Defendant's Affirmative Defenses

The Defendant has properly plead the affirmative defenses of: (1) accord and satisfaction; (2) failure of consideration; (3) laches; (4) payment; (5) release; and (6) setoff.[100] The Defendant has since waived the affirmative defenses of accord and satisfaction, laches, and release.[101] Accordingly, only the affirmative defenses of failure of consideration, payment, and setoff are before the Court. For the reasons stated hereafter, the Court will grant summary judgment on the Defendant's affirmative defenses of payment and failure of consideration. However, the Court will deny summary judgment on the Defendant's affirmative defense of setoff.

### i. Failure of Consideration

The Defendant pleaded the affirmative defense of failure of consideration claiming that it did not receive from the Debtor what it contracted for in the Agreement.[102] The Trustee now moves for summary judgment on this defense claiming that there is no evidence before the Court to

---

[98] *See, e.g.*, Trustee's App. 861 (KTXS-TV Invoice for October 2018). Dickey's never contended it paid the service fee, nor has it provided that the amounts sought by the Trustee had been *paid in full* to the Vendors. *See* Rooney Decl., ¶ 12 ("According to Dickey's records, it has paid all amounts claimed by the Trustee with the exception of $291,450.46.").

[99] By this ruling, the Court does not reach the amount of damages stemming from the breach or setoff by the Defendant's payments to Vendors.

[100] Dkt. No. 19 at 5.

[101] Dkt. No. 45 at 9, 11 ("Dickey's does not object to the Motion [for Summary Judgment] solely on the defenses of accord and satisfaction, laches, and release and hereby waives these defenses.").

[102] *See* Dkt. No. 13–14.

support a failure of consideration.[103] Further, the Trustee claims that the summary judgment record conclusively shows the Debtor's provision of the promised consideration under the Agreement by its placement and running of the Defendant's advertisements.[104] Upon review of the summary judgment record, the Court finds that no genuine issue of material fact exists as to whether the Debtor provided the services contemplated under the Agreement. Thus, the Court will grant summary judgment as to this affirmative defense.

Under Texas law, failure of consideration is an affirmative defense to an action on a written agreement.[105] The defense occurs when, because of some supervening event after the agreement is entered, the promised performance fails.[106] "The affirmative defense defeats summary judgment if the nonmovant presents evidence that it did not receive the consideration set forth in the agreement."[107] While a total failure of consideration is grounds for cancellation or rescission of the contract, a partial failure of consideration will not invalidate the contract and prevent recovery thereon, but is a defense *pro tanto*.[108]

Here, the Defendant has failed to present evidence rebutting the services rendered by the Debtor that would amount to a failure of consideration under the Agreement. The Agreement stated that the Debtor would provide certain services to the Defendant, including: ordering the media space/time for running ads, auditing invoices from Vendors, assisting in the analysis of advertising efforts, and leading public relations efforts.[109] The Debtor provided those services in the months in question and sent invoices to the Defendant for payment.[110] The Defendant both claims it had

---

[103] Dkt. No. 37 at 16–17.
[104] *Id.*
[105] *Garcia v. Lumacorp, Inc.*, No. Civ.A. 3:02–CV–2426, 2004 WL 1686635, at *11 (N.D. Tex. July 27, 2004) (internal citations omitted).
[106] *Id.*
[107] *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 748 (Tex.App—Dallas 2012, no pet.).
[108] *Id.*
[109] Trustee's App. 5.
[110] *See, e.g., id.* at 12–1804.

to pay Vendors directly and that it has no evidence that the services were actually provided by the Debtor.[111] Again, the record is replete with invoices sent by the Debtor for work done under the Agreement. The Defendant presents the Rooney Declaration as evidence that there was a disruption in services, forcing the Defendant to step into the place of the Debtor in connection with its alleged repudiation or failure to perform.[112] Yet, besides this singular statement, the *overwhelming* evidence shows that the Debtor continued to perform during the months of the Invoices.[113] Whether the Defendant made payments to Vendors in the Debtor's stead goes more to the setoff defense or the Trustee's damages. It does not present a dispute as to whether there was a failure of consideration on behalf of the Debtor. The Debtor placed ads, and those ads ran. Accordingly, the Defendant has failed to "present[] evidence that it did not receive the consideration set forth in the agreement."[114] The Court grants summary judgment as to the affirmative defense of failure of consideration.

ii.     *Payment*

The Defendant asserts that the Trustee's claims are barred based on the "defense of payment."[115] Specifically, the Defendant claims that it has provided evidence that it paid $1,163,652.20 directly to Vendors for the amounts claimed by the Trustee, that its defense is viable for that amount, and that it is entitled to offsets for the damages that it suffered in an amount to be determined by this Court at trial.[116] The Trustee, in response, moves for summary judgment on the defense claiming that the Defendant has not complied with the procedural requirements to prove

---

[111] Dkt. No. 45 at 14.
[112] Dkt. No. 46-3 (Defendant's Exh. "C").
[113] *See generally* Trustee App. 12–1804.
[114] *Cheung-Loon*, 392 S.W.3d at 748.
[115] Dkt. No. 19 at 5.
[116] Dkt. No. 45 at 14–15.

such payments, and as such, there is no evidence of payment before the Court.[117] The Trustee additionally claims that even if there was evidence of partial payment, anything less than proof of payment in full is not a defense to liability as a matter of law.[118] Because the Court finds that the Defendant has only provided proof of *partial* payment, the Court will grant summary judgment as to the affirmative defense of payment.

Texas law does provide for payment as an affirmative defense.[119] However, the affirmative defense of payment should be more appropriately called the defense of "payment *in full*," as that is what is required under Texas law.[120] The Defendant has the burden to prove it has made payment in full.[121] Here, the Defendant has admittedly only provided proof of *partial* payment on the record at summary judgment, and even those payments cannot be traced directly to the Invoices or to Levenson's services.[122] Accordingly, the Court concludes that the Defendant's defense of payment fails as a matter of law, and the Court will grant summary judgment thereon.

    *iii.*    Setoff

The Defendant has pleaded the affirmative defense of setoff, claiming that the monetary demand by the Trustee should be adjusted in accordance with the amount of damages it incurred

---

[117] Dkt. No. 37 at 18 ("When a defendant claims it paid the sums sued for, the defendant must either: (a) file with its answer an accounting that distinctly states the details of the alleged payment or (b) describe the payment in the answer so plainly and particularly as to give the plaintiff full notice of the character of the alleged payment.") (citing Tex. R. Civ. P. 95).

[118] *Id.*

[119] Tex. R. Civ. P. 94.

[120] *Wallace v. Perry (In re Perry)*, 423 B.R. 215, 288–89 (Bankr. S.D. Tex. 2010) ("The defense of payment requires all payments owed by a defendant to a plaintiff to have been made.") (internal citations omitted); *Ramirez v. GEICO*, 548 S.W.3d 761, 769 (Tex.App.—El Paso 2018, pet. denied) ("'Payment in full' is an affirmative defense that Geico was required to plead.") (internal citations omitted).

[121] *See id.* ("Because 'payment in full' is an affirmative defense for which a defendant bears the burden of proof, Geico could not raise such a defense in a no-evidence motion for summary judgment."); *see also* Tex. R. Civ. P. 95 (detailing the procedural requirements for a plea of payment).

[122] *See e.g.*, *State St. Capital Corp. v. Gibson Tile, Inc.*, No. Civ.A.3:97–CV–1329–P, 1998 WL 907027, at *7 (N.D. Tex. Dec. 16, 1998) (denying the defense of payment when defendant had not made all payments). As previously stated, the Defendant has not contended it paid the service fee, nor has it provided that the amounts sought by the Trustee have been paid in full to the Vendors. *See* Rooney Decl., ¶ 12 ("According to Dickey's records, it has paid all amounts claimed by the Trustee with the exception of $291,450.46.").

on account of the Debtor's alleged breach, as well as those payments already made to Vendors directly.[123] The Trustee has moved for summary judgment on this affirmative defense. The Trustee claims that there is no admissible evidence in the record establishing a right to setoff, nor does the Agreement provide for any such right.[124] Further, the Trustee claims there is no admissible evidence that the Defendant has directly paid any Vendors for the amounts the Trustee seeks from the Defendant.[125] The Court finds a genuine issue of material fact exists as to this defense and will deny summary judgment thereon.

The right of setoff is an affirmative defense under Texas law that must be pleaded and proved by the party asserting it.[126] Setoff "is a form of *equitable* counterclaim which brings together obligations of parties opposing each other and, *by judicial action*, makes each obligation extinguish the other."[127] The purpose of the defense is "to adjust the demands between the parties and allow recovery of only the balance that is due."[128] Those demands are meant to be mutual, between the same parties, and in the same capacity or right.[129]

The Defendant has presented *some* evidence that the payments made directly to Vendors were to satisfy amounts owed for advertisements Levenson placed on Dickey's behalf.[130] The linkage of the checks in evidence, signed by Dickey's and paid to Vendors, to payments owed by the Debtor was not made either by the pleadings or the argument of counsel at hearing, but does

---

[123] Dkt. No. 45 at 15.

[124] Dkt. No. 37 at 20–21.

[125] *Id.* at 21.

[126] *Smith v. Davis*, 462 S.W.3d 604, 614 (Tex.App.—Tyler 2015, pet. denied); *Alexander v. Kent*, 480 S.W.3d 676, 701 (Tex.App.—Fort Worth 2015, no pet.); *Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 204 (Tex.App.—Dallas 2014, no pet.).

[127] *Al Asher & Sons, Inc. v. Foreman Elec. Serv. Co.*, No. MO:19-CV-173-DC, 2021 U.S. Dist. LEXIS 125864, at *38 (W.D. Tex. Apr. 28, 2021) (emphasis added) (quoting *Cap. Concepts Prop. 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994)).

[128] *Cap. Concepts*, 35 F.3d at 175 (quoting *Anderson v. Vinson Expl. Inc.*, 832 S.W2d 657, 666 (Tex. App.—El Paso 1992, writ denied)).

[129] *Driveline Retail Merch., Inc. v. PepsiCo, Inc.*, No. 4:17-CV-00423, 2018 WL 2298386, at *9 (E.D. Tex. May 21, 2018) (internal citations omitted).

[130] Dkt. No. 46-1–46-9 (Defendant's Exh. "A"); *see also* Dkt. No. 46-3 (Defendant's Exh. "C").

raise a genuine factual dispute sufficient to save the Defendant's defense of setoff.[131] Therefore, the Court will not grant summary judgment as to the Defendant's setoff defense. There still lies a genuine dispute before the Court as to whether certain amounts paid by the Defendant were for amounts sought by the Complaint, and the Court will allow the Defendant the opportunity to prove such amounts at trial. Accordingly, summary judgment is denied as to the Defendant's affirmative defense of setoff.

### C.  The Defendant's Counterclaim for Breach of Contract

On August 18, 2020, the Defendant filed its counterclaim, concurrently with its Answer, asserting breach of contract against the Debtor.[132] In the counterclaim, the Defendant claimed that the Debtor breached the Agreement by failing to provide services contemplated therein and that it was entitled to recover damages proximately caused by the Debtor for that breach.[133] On September 8, 2020, the Trustee filed its Answer to the Counterclaim in which it denied the allegations.[134] As such, the Trustee has now moved for summary judgment on the Defendant's counterclaim for breach of contract.[135] The Trustee claims it is entitled to summary judgment on the Defendant's counterclaim because there is an absence of evidence demonstrating any genuine issue of material fact, and, specifically, the Defendant has not provided evidence of breach ***as to the time period covered by the Invoices***.[136] For the reasons stated herein, the Court agrees with the Trustee and grants summary judgment on the Defendant's counterclaim for breach of contract as to the time period covered by the Invoices.

---

[131] *See, e.g.*, Dkt. No. 46-14 (Defendant's Exh. "F"). In Mr. Cunningham's deposition, he conceded that he had received some receipts of payment by Dickey's to certain Vendors but did state that the evidence provided "no details" on the payments. *Id.* at 8:20–9:5.

[132] Dkt. No. 19 at 6.

[133] *Id.* In the Opposition, the Defendant made similar assertions that the Debtor failed to "perform on its end of the bargain." Dkt. No. 45 at 16.

[134] Dkt. No. 22.

[135] Dkt. No. 37 at 20–22.

[136] *Id.*

To prevail on its breach of contract counterclaim, the Defendant must establish there is no genuine issue as to any material fact regarding each of the elements, namely: (1) the existence of a valid agreement; (2) the Defendant performed or tendered performance; (3) the Debtor's breach; and (4) damages to the Defendant resulting from the Debtor's breach.[137] The moving party may meets its burden on summary judgment by "pointing to an absence of evidence to support the nonmoving party's case."[138] As such, the moving party is not required to present evidence proving the absence of a material fact issue.[139]

Here, the parties are of agreement that the Debtor was obligated to provide certain media services for the Defendant, and in return, the Defendant would provide payment.[140] The Trustee has presented evidence that such services, in the months in question, were performed.[141] Put simply, the Debtor placed advertisements for the Defendant with certain media entities. In fact, the detailed logs appear to present that the Debtor provided substantial services to the Defendant up to the Petition Date.[142] The Defendant has *not* presented evidence to this Court that such services were not rendered or that the Defendant was excused from paying.[143] Those services arranged by the Debtor on behalf of the Defendant were rendered. The Defendant has also not provided to the Court proof of payment in full for the invoices in question, but rather, the Defendant has argued that it was "forced" to pay Vendors directly. Overall, the Defendant has failed to point the Court

---

[137] *See Smith Int'l, Inc. v. Egle Grp. LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex.App.—Houston [1st Dist.] 2001, no pet.); *Arnette*, 454 B.R. at 691; *Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 813–14 (Tex.App.—Dallas 2013, no pet.).

[138] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (internal quotations omitted) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

[139] *Id.*

[140] Trustee's App. 5 (the Agreement); Dkt. No. 19 (asserting in the Defendant's counterclaim that the Debtor "was obligated to obtain or provide media services to Dickey's under the Agreement in exchange for payments from Dickey's.").

[141] *See, e.g.*, Trustee's App. 861 (KTXS-TV Invoice for October 2018).

[142] *See id.* at 12–1804; 1808–09.

[143] As discussed more fully in the Court's denial of the Motion to Amend, the Defendant did not properly plead the affirmative defense of anticipatory repudiation, nor did the Defendant present much, if any, admissible evidence showing such a repudiation.

to evidence of the Debtor's breach prior to the Petition Date, and further, it has failed to show the Court that it paid for services rendered under the Agreement by the Debtor.

Because the Defendant has failed to provide evidence of the Debtor's breach of the Agreement, the Defendant cannot establish breach of contract as a matter of law.[144] Accordingly, the Court grants summary judgment on the Defendant's counterclaim as to the time period covered by the Invoices.

## VI.   <u>Conclusion.</u>

The Court hopes its ruling serves as either a path to compromise for the parties or a guidepost for an eventual trial. To the Court, it is apparent from the record that the Debtor rendered services under the Agreement. However, it is also clear that the Defendant provided some payment, likely directly to the Vendors, that provides for a setoff against amounts due to the Trustee.

Thus, based upon the foregoing and the record before the Court, it is hereby

**ORDERED** that the Defendant Motion for Leave to Amend is **DENIED**; and it is further

**ORDERED** that the Trustee's Motion for Summary Judgment is hereby **DENIED IN PART AND GRANTED IN PART** as stated more fully in the Order.

<b>###END OF ORDER###</b>

---

[144] *Boudreaux*, 402 F.3d at 544 (internal citations omitted).